Dear Ms. Edwards:
This office is in receipt of your request for an opinion of the Attorney General in regard to an order rendered by the Louisiana State Board of Medical Examiners relative to the requirement that the act of determining medical necessity or appropriateness of proposed medical care so as to effect the diagnosis or treatment of a patient in Louisiana is the practice of medicine and must be made by a physician licensed to practice medicine in this state. It is the board's conclusion that an individual or entity which makes a determination of medical evaluation or care, and who does not possess a Louisiana medical license or other authorization to practice medicine in this State, may be engaged in the unauthorized practice of medicine, and are subject to investigation and injunction by the Board as well as criminal prosecution and imprisonment.
The question has arisen with the Department of Insurance whether the determination made by the Louisiana State Board of Medical Examiners constitutes a lawful order enforceable under R.S.22:2016(E) (2).
We find it pertinent to note that R.S. 22:2001 sets forth that "this part may be cited as the Health Maintenance Organization Act." Thereafter in the definitions in R.S. 22:2202 we find that paragraph 6 defines "Health Care Services" as including "any service rendered by providers which include but are not limited to medical and surgical care, psychological, optometric, optic, chiropractic, podiatric, nursing, and pharmaceutical service;" and paragraph 7 defines "health maintenance organization" to include "any corporation organized and domiciled in this statewhich undertakes to provide or arrange for the provision of basicheath care services to enrollees in return for prepaid charge."
R.S. 22:2006 delineates, "subject to the provisions of R.S.22:2016(E) and regulations adopted and approved by the commissioner" the powers of health maintenance organization. It includes in part the power to purchase, operate or maintain medical facilities as may be reasonably required for its administrative offices or in transaction of its business; the power to secure loans to providers under contract with the health maintenance organization; the power to furnish health careservices through providers which are under contract with oremployed by the health maintenance organization; the power to offer other health care services in addition to basic health care service.
It is further provided in R.S. 22:2016(E) as follows:
 Each health maintenance organization shall meet the following requirements:
 (1) All facilities located in this state including but no limited to hospitals, medical facilities, and nursing care and intermediate care facilities to be utilized by the health maintenance organization shall be licensed, if such licensure is required by law.
 (2) All personnel employed by or under contract to the health maintenance organization shall be licensed or certified by their respective board or agency, if such licensure or certification is required by law.
 (3) All equipment required to be licensed or registered by law shall be so licensed or registered and the operating personnel for such equipment shall be licensed or certified as required by law.
It is based upon these statutes that you ask whether the determination of the Board of Medical Examiners constitutes a lawful order enforceable under R.S. 22:2016(E) (2), and how to enforce the order.
Based upon the jurisprudence this office has observed that it is well established that while the legislature may not delegate purely legislative power, it may have administrative officers fill in the details by prescribing rules and regulations. Thus, the legislature may delegate to administrative boards and agencies the power to ascertain and determine the facts upon which the laws are to be applied and enforced. The rules and regulations then have the force of law. Atty. Gen. Op. No. 96-372.
Herein the Board has ruled that the act of determining the necessity of proposed medical care so as to effect the diagnosis or treatment of a patient must be made by a licensed physician of this state, or such evaluation without a license may be unauthorized practice of medicine. R.S. 37:1261 defines "the practice of medicine" as being engaged in the diagnosing, treating, curing, or relieving of any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being. It is further provided in R.S. 37:1271 that no person shall practice medicine until he possesses a duly recorded license issued under these statutes, and R.S. 37:1270 empowers the Board to examine all applicants for the practice of medicine, and to adopt rules, regulations and standards necessary to carry out the board's duties, powers and functions.
Moreover, R.S. 22:2016(D) provides that "any health maintenance organization authorized under this Part shall not practice medicine and shall not be deemed to practice medicine, provided, however, that the administrative treatment guidelines of health maintenance organizations shall not impinge upon nor encumber the independent medical judgment of the treating physician or health care provider."
We must conclude that the Board's order that a determination that effects diagnosis or treatment of a patient requires a Louisiana medical license is applicable to R.S. 22:2016(E) (2) as having the effect of law. This conclusion is not only justified by the statutes relative to the powers and duties of the Board of Medical Examiners, and those that govern the Health Maintenance Organizations, but by the reasonableness of the rule in requiring that decisions that effect diagnosis or treatment of a patient necessitates the skill of a licensed medical practitioner's determination, and is consistent with the legislative mandate of R.S. 22:2016(D) that HMO treatment guidelines "shall not impinge upon nor encumber the independent medical judgment of the treating physician."
Having concluded that the rule of the Board requiring those individuals engaged in determinations that affect diagnosis or treatment of a patient be licensed applies to the Health Maintenance Organizations as set forth in R.S. 22:016(E) (2), we turn to your question of how to enforce the order of the Board of Medical Examiners.
This office has observed that the Commissioner of Insurance has limited regulatory power with regard to Health Maintenance Organizations inasmuch as a health maintenance organization is not an insurance company under Louisiana law. Accordingly, this office stated, "Hence any authority of the Commissioner of Insurance with regard to HMO's must be provided within the Health Maintenance Organization Act itself, and not appropriated by analogy from other provisions of the rest of Title 22 dealing with Commissioner's authority to regulate insurance companies." Atty. Gen. Op. Nos. 89-218, 95-223.
Therefore, it must be concluded that any action of the Commissioner of Insurance would have to fall within the limited provisions of R.S. 22:2013 that allows for suspension or revocation of any certificate of authority issued to a HMO, and, enforcement could also be obtained through an action of the Board of Medical Examiners.
We hope this sufficiently answers your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________________ BARBARA B. RUTLEDGE Assistant Attorney General